# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                          No. 18-CR-3221-WJ

**CARLOS ROBLES-GONZALEZ**,

    Defendant.

## MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO SENTENCING GUIDELINES CALCULATION

THIS MATTER comes before the Court following a hearing on *Defendant's Objections to Pre-Sentence Report and Sentencing Memorandum* (**Doc. 22**, filed 1/24/19). The Defendant is charged with illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(a)(1) and (2), and 8 U.S.C. § 1326(b)(2). The Court has reviewed the reports from the United States Probation Office (Docs. 17, 27) and has considered the parties' pleadings (Docs. 22, 25, 34), the arguments presented by counsel at the May 6, 2019 hearing, and the applicable law. For the reasons stated below and at the May 6, 2019 sentencing, the Court **OVERRULED** Defendant's objection to the Pre-Sentence Report ("PSR") including a 2004 revocation of supervised release in Defendant's United States Sentencing Guidelines calculation. *See* PSR, ¶ 28; Doc. 22.

The Court accepted the Fed. R. Crim. P. 11(c)(1)(C) plea agreement and, pursuant to U.S.S.G. § 5K3.1, concluded that the correctly calculated total adjusted United States Sentencing Guidelines range is 24–30 months based on a total offense level of 15 and criminal history category of III. The Court imposed a within-Guidelines sentence of 24 months' commitment to the custody of the Bureau of Prisons.

## STATEMENT OF THE CASE

Defendant argues that he should not receive three points toward his criminal history score or an eight-point offense level enhancement because the petition that supported the revocation of his supervised release related to his 1999 marijuana trafficking conviction violated the Warrant Clause of the Fourth Amendment. The issue before the Court for sentencing was that, if the Court sustained Defendant's objection, then the points related to the 1999 marijuana trafficking conviction would have fallen outside of the 15-year window of convictions included in criminal history category calculation. *See* U.S.S.G. § 4A1.1(a) cmt. n.1. Defendant also would not have received the eight-point enhancement under § 2L1.2(b)(2)(B). *See* U.S.S.G. § 2L1.2 cmt. n.3. In that case, defense argued, the appropriate Sentencing Guidelines range would have been 2–8 months' imprisonment based on an offense level of 7 and criminal history category II. Doc. 34.

The parties acknowledge that there is a split among some of the United States Circuit Courts of Appeals, in which the First and Fifth Circuits disagree with the Ninth Circuit's ruling that the Fourth Amendment imposes an oath requirement on the petition underlying the revocation of a defendant's term of supervised release. At the hearing, the Court overruled Defendant's objection on the grounds that, absent controlling United States Supreme Court or Tenth Circuit Court of Appeals precedent, the rationale articulated by the First and Fifth Circuit Courts of Appeals is more persuasive than that of the Ninth Circuit.[1] The Court found that the Sentencing Guidelines calculation in the PSR was correct, which reflects that an offense level 15 and a criminal history category III yields an advisory Sentencing Guidelines range of 24–30 months' imprisonment. PSR, ¶ 57.

---

[1] The defense did not provide grounds for any theory that the case law from the Ninth Circuit is binding in this case, and the parties' arguments approached this issue as one from persuasive authority.

## DISCUSSION

I.  **Underlying Facts and Procedural History**

After living in the United States, Defendant was deported on or about July 20, 1999 to Mexico. PSR, ¶ 28. Eight days later, on or about July 28, 1999, Defendant was apprehended when he attempted to reenter the country through the United States Port of Entry at San Ysidro, California, in a vehicle transporting marijuana. PSR, ¶ 28. Defendant pleaded guilty in the United States District Court in the Southern District of California to knowingly and intentionally importing approximately 31.4 kilograms of marijuana from outside the United States. PSR, ¶ 28. Defendant was sentenced to 24 months of custody and three years of supervised release. PSR, ¶ 28. Defendant's term of supervised release commenced on July 20, 2001, when Defendant was deported from the United States, and was set to expire on July 19, 2004. PSR, ¶¶ 28, 30.

On March 12, 2003, Defendant was arrested for driving under the influence in Los Angeles, California, and he was sentenced for the DUI on April 3, 2003, to 45 days of custody. PSR, ¶ 29. Prior to the expiration of his term of supervised release for the 1999 marijuana trafficking conviction, a Petition for Warrant or Summons of Offender Under Supervision was filed on May 6, 2003 in the Southern District of California because the DUI and illegal reentry violated the terms of Defendant's supervised release. Case No. 3:99-cr-02468-R-1, Doc. 15. The revocation petition alleged in Count 1 that Defendant illegally reentered the United States in violation of 8 U.S.C. § 1326 and, in Count 2, alleged that Defendant had driven a vehicle with a blood alcohol content higher than 0.08%. *Id.* A no-bail bench warrant was issued on May 6, 2003. Case No. 3:99-cr-02468-R-1, Doc. 16.

On January 14, 2004, Defendant was detained by the Los Angeles Immigration and Customs Enforcement, which notified the Department of Homeland Security that Defendant was

in its custody. PSR, ¶ 30. Defendant was charged with misdemeanor and felony reentry violations in the United States District Court in the Central District of California. PSR, ¶ 30. Having been twice deported before, Defendant was sentenced on May 6, 2004, to six months' imprisonment on the misdemeanor and 24 months' imprisonment on the felony charge, to be followed by 12 months of supervised release, which commenced on April 17, 2006. PSR, ¶ 30.

On May 14, 2004, the Report Commencing Criminal Action was filed in the Central District of California for the revocation of Defendant's supervised release, as was the final commitment and warrant of removal, for the Southern District of California. Case No. 04-mj-1116, Docs. 1, 9. It took from May 14, 2004, to September 7, 2004, to transfer Defendant from the Central District to the Southern District of California. Doc. 25 at 6. Defendant appeared in the Southern District of California on September 7, 2004, for his arraignment on the revocation of his supervised release. Case No. 3:99-cr-02468-R-1, Doc. 18. At the November 8, 2004 revocation hearing, Defendant admitted the allegations as related to violating his supervised release and he was sentenced to a term of 24 months' imprisonment, which was to run concurrent with the illegal reentry sentences out of the Central District of California. Case No. 3:99-cr-02468-R-1, Doc. 21. Defendant did not receive another term of supervised release in the Southern District of California. *Id.* Defendant was deported on April 17, 2006, when his term of supervised release commenced in the Central District of California. PSR, ¶ 30.

On September 14, 2018, United States Border Patrol agents found the Defendant in Dona Ana County, New Mexico, when the agents observed four individuals running away from the International Boundary fence near the Camino Real Landfill in Sunland Park. PSR, ¶ 5. An Information was filed in the United States District Court in the District of New Mexico charging the Defendant with reentry of a removed alien in violation of 8 U.S.C. §§ 1326(a)(1), (2) and 8

U.S.C. § 1326(b)(2). PSR, ¶ 1. On October 3, 2018, the defendant pleaded guilty to the one-count Information and entered into a written plea agreement with the Government, pursuant to Fed. R. Crim. P. 11(c)(1)(C), stipulating to a two-level downward departure in accordance with the Early Disposition Program under U.S.S.G. § 5K3.1. PSR, ¶ 3.

The PSR reflects that Defendant's base offense level is 8. PSR, ¶ 10. Defendant received a four-point specific offense characteristic enhancement pursuant to U.S.S.G.§ 2L1.2(b)(1)(A) for a previous illegal entry felony conviction, and an eight-point specific offense characteristic enhancement pursuant to U.S.S.G. § 2L1.2(b)(2)(B) for a non-reentry felony conviction with a sentence of over two years. PSR, ¶¶ 11–12. Defendant received a three-point reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) and (b), and another two-point reduction pursuant to his Fed. R. Crim. P. 11(c)(1)(C) plea agreement under U.S.S.G. § 5K3.1. PSR, ¶¶ 18–20. The eight-point enhancement under § 2L1.2(b)(2)(B) for sustaining a conviction for which the sentence imposed was two years or more stems from Defendant's marijuana trafficking conviction out of the Southern District of California. PSR, ¶ 12. Defendant also received three criminal history points related to the marijuana trafficking charge. PSR, ¶ 28. Defendant's criminal history points totaled 6, which results in a criminal history category of III. PSR, ¶¶ 31–32. At the May 6, 2019 hearing, the Court found that the final adjusted Sentencing Guidelines range in the PSR was correct, which reflects that an offense level 15 and criminal history category III yields an advisory Sentencing Guidelines range of 24–30 months' imprisonment. PSR, ¶ 57.

## II. Analysis

The effect of the 2004 revocation of Defendant's supervised release for his 1999 marijuana trafficking conviction is key to Defendant's Sentencing Guidelines calculations: although the drug

trafficking conviction was in 1999, the 24-month sentence for the 2004 revocation of Defendant's supervised release effectively pulls the trafficking charge back within the 15-year timeframe for convictions under U.S.S.G. § 4A1.1(a). Through this cumulative "stacking" of the charges, the Defendant's sentencing exposure increases under U.S.S.G. § 2L1.2 as does his criminal history category. Defendant's objection is not that the revocation did not have this "stacking" effect on his advisory Sentencing Guidelines range; rather, Defendant argues that the revocation of his supervised release itself was unconstitutional because the underlying petition was not sworn to, and therefore the revocation conviction and the stacked marijuana trafficking conviction should not comprise part of his Sentencing Guidelines calculations. As explained at the May 6, 2019 hearing and as stated below, the Court rejects Defendant's argument because the Fourth Amendment Warrant Clause does not apply to the warrant issued for revocation of supervised release under 18 U.S.C. § 3583(i) in Defendant's case.

### A. Law on Delayed Revocation Statute, 18 U.S.C. § 3583(i)

18 U.S.C. § 3583(i), called the Delayed Revocation Statute, allows a district court to maintain jurisdiction to impose a sentence for revocation of supervised release beyond the expiration of the term if, prior to the expiration of the term, a warrant issued on the basis of an alleged violation of the conditions of release. Although "section 3583 extends the jurisdiction of a court to hold revocation hearings after the term of supervised release has expired, 18 U.S.C. § 3606 actually governs the issuance of warrants for the arrest of probationers or supervised releasees." *United States v. Collazo-Castro*, 660 F.3d 516, 519 (1st Cir. 2011) (brackets omitted) (citation omitted). Section 3606 provides that there must be "probable cause to believe that a probationer or a person on supervised release has violated a condition of his probation or release," in which case, he may be arrested upon a warrant issued by a court with jurisdiction. 18 U.S.C. § 3606.

Relevant here is that neither revocation statute provides a definition of "warrant," which led the Ninth Circuit Court of Appeals to adopt the characterization from the Constitution.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Fourth Amendment construction of "warrant," which is referred to as the Warrant Clause, thus requires proof of probable cause supported by statements made under oath. The United States Circuit Courts of Appeals have split about whether, in the absence of a statutory definition of "warrant," 18 U.S.C. §§ 3606 and 3583(i) require an underlying petition to be sworn in accordance with the Fourth Amendment Warrant Clause, or whether this constitutional requirement is not applicable to a warrant for revocation of supervised release that issues under §§ 3583(i) and 3606. The Ninth Circuit has ruled that the Fourth Amendment Warrant Clause extends to these statutes, while the Fifth and First Circuits have openly disagreed.

### 1. The Ninth Circuit's Position

Defendant relies on *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004), *reh'g denied*, 408 F.3d 1227 (9th Cir. 2005), in which the Ninth Circuit reversed the district court's decision that the petition underlying the bench warrant for revocation of supervised release was valid despite not being sworn under oath. 389 F.3d at 902–05. The Ninth Circuit ruled that the Warrant Clause extends to warrants issued for violations of supervised release under 18 U.S.C. § 3583(i), and that the Constitution therefore required the allegations in the underlying petition be made under oath. *Id.* The Ninth Circuit stated that "when Congress uses a term of art, such as 'warrant,' unless Congress affirmatively indicates otherwise, we presume Congress intended to incorporate the common definition of that term[,]" which the Circuit drew directly from the Fourth Amendment's oath requirement. *Id.* at 904 ("[W]here Congress has used the word 'warrant,' it has

7

incorporated the Fourth Amendment's prohibition against the issuance of warrants based on something less than probable cause supported by sworn facts."). The Ninth Circuit's analysis also includes a scrutinous reading of the past tense used in § 3583(i) (when a "warrant or summons has been issued") compared to the present tense in Federal Rules of Criminal Procedure[2] 4 and 9, which provide that there must be probable cause supported by oath or affidavit for a court to "issue" a warrant or summons. *Id.* at 906–07. The Ninth Circuit concluded that "the use of the past tense in § 3583(i) implies that the statute does not relate to the requirements for issuing a warrant at all, but rather solely pertains to the court's jurisdiction if an arrest warrant has already been validly issued." *Id.* at 906. Finally, the Ninth Circuit ruled that, although supervised releasees are subject to some lesser Fourth Amendment protections, the Warrant Clause applies without exception to revocations of supervised release. *Id.* at 907.

The Ninth Circuit denied a rehearing en banc in *Vargas-Amaya*; however, there was an adamant dissent from the denial of rehearing en banc, which expressed the opinion of several Ninth Circuit judges that "[t]his decision is wrong as a matter of law, disparages the role of district judges, insults the integrity of federal probation officers, and unnecessarily interferes with and complicates the administration of justice, as it has already rendered thousands of outstanding warrants potentially unenforceable." *United States v. Vargas-Amaya*, 408 F.3d 1227, 1228 (9th Cir. 2005) (Callahan, J., dissenting). The dissent points out that the panel "fails to distinguish the dynamics of ordinary arrest proceedings from those concerning supervised release." *Id.* at 1229. In succinct criticism, the dissent argues that "[t]he panel fails to square its literal application of the Fourth Amendment with the reasons given by the Supreme Court for not extending the full panoply

---

[2] Rule 4(a) provides the procedure for an arrest warrant or summons on a complaint. Rule 9(a) provides the procedure for an arrest warrant or summons on an indictment or information.

8

of Fourth Amendment rights to convicted defendants on supervised release." *Id.* at 1230 (citing *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357 (1998), and *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

### 2. The First and Fifth Circuits' Positions

In *United States v. Collazo-Castro*, 660 F.3d 516 (1st Cir. 2011), the First Circuit also rejected the panel's reasoning from the Ninth Circuit and expressed agreement with the Fifth Circuit's rationale in *United States v. Garcia-Avalino*, 444 F.3d 444 (5th Cir. 2006).[3] Notably, the First Circuit points out that the Fifth Circuit also relied on the wording in Federal Rules of Criminal Procedure 4 and 9, yet the Fifth Circuit came to an opposite conclusion about congressional intent. *See Collazo-Castro*, 660 F.3d at 520–21. The Fifth Circuit reasoned that explicit oath or affirmation requirements, such as those in the Fourth Amendment and the Federal Rules of Criminal Procedure 4 and 9, are "not proof that there is an implicit sworn-facts requirement embedded in the very meaning of the word 'warrant' as a legal term. If anything, such examples suggest the converse, i.e. that a valid warrant need not be supported by sworn facts unless a specific statutory provision requires such support." *Garcia-Avalino*, 444 F.3d at 445. The Fifth Circuit then drew attention to the case of a defendant who is on pretrial release, for which there is no oath requirement to issue a warrant for arrest of a defendant for violating terms of release. 18 U.S.C. § 3148(b) (an "attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release.").

---

[3] In *Collazo-Castro* and *Garcia-Avalino*, the procedural facts are generally the same as those described by the Ninth Circuit in *Vargas-Amaya* and here, in that a warrant issued for the revocation of supervised release of the defendant prior to the expiration of the defendant's term of supervised release based on an unsworn petition or motion by the probation officer, although the defendant was not convicted until after the term expired, pursuant to 18 U.S.C. § 3583(i).

9

The First and Fifth Circuits also reasoned that before the parole system was replaced, Congress never imposed an oath requirement for the retaking of a prisoner released on parole, precisely because such a person was "already within the legal custody of the authorities[.]" *Collazo-Castro*, 660 F.3d at 521 (quoting *Story v. Rives*, 97 F.2d 182, 188 (D.C. Cir. 1938)). These courts "have explained that the reason these rules for taking someone into custody do not necessarily apply is that a convicted criminal on supervised release (or parole) is already in 'constructive custody.'" *Id.* at 522. As the First Circuit noted, "[b]ecause Congress is presumed to have known that the parole statute had no oath requirement, its failure to engraft such a requirement onto section 3606 speaks volumes." *Id.*

### B. The Court Will Follow the First and Fifth Circuits' Approach for Applying the Delayed Revocation Statute

In this case, Defendant's term of supervised release for the 1999 marijuana trafficking conviction in the Southern District of California commenced on July 20, 2001 and expired on July 19, 2004. The Petition for Warrant or Summons of Offender Under Supervision was filed on May 6, 2003 because the DUI and the illegal reentry violated the terms of Defendant's supervised release in the Southern District of California. The petition for the arrest warrant was therefore filed for conduct that occurred during the term of supervised release (Defendant was arrested on March 12, 2003), and the petition for arrest and the arrest warrant were filed before the expiration of the term of supervised release. Defendant was convicted for the supervised release violations on November 8, 2004. The United States District Court in the Southern District of California therefore exercised its jurisdiction to sentence Defendant for the supervised release convictions under 18 U.S.C. § 3583(i).

The Court is not persuaded by the Ninth Circuit's hairsplitting and counterintuitive interpretation; rather, the commentary from the First and Fifth Circuits is persuasive because it

accounts for a plain meaning statutory interpretation, as well as the common-sense policy behind delayed revocation jurisdiction under 18 U.S.C. § 3583(i). First, the Court will not read into the statute constitutional requirements that are not apparent on its face. The word "warrant" in the context of a revocation does not manifest into a "term of art" that automatically incorporates all the constitutional protections of the Fourth Amendment. *See Collazo-Castro*, 660 F.3d at 530; *Garcia-Avalino*, 444 F.3d at 446. There is no evidence of congressional intent to support such a literal interpretation as that in *Vargas-Amaya* because, under the Ninth Circuit's interpretation, the arrest of a parolee under the former parole scheme would have required a sworn affidavit, as would the issuance of an arrest warrant for a defendant on pretrial release. But these schemes—both past and present—have no oath requirements. 18 U.S.C. § 3148(b); 18 U.S.C. § 717 (1946). In comparison, Federal Rules of Criminal Procedure 4 and 9 do have express oath requirements, but these rules apply to unconvicted individuals. The legislative silence and absence of an oath requirement in 18 U.S.C § 3583(i) is indicative of the plain reading of "warrant," such that the Ninth Circuit's interpretation defies the apparent meaning.

Second, the Supreme Court has ruled that the traditional array of protections provided by the Fourth Amendment do not apply to individuals who are within custody of the court. In this case, the "reach back" jurisdiction under 18 U.S.C. § 3583(i) is exactly what it purports to be—it allows the court to bring a supervised releasee *back into* physical custody through an arrest warrant; it does not allow a warrant to issue for an individual not already subject to the court's jurisdiction for a criminal prosecution. This Court explained at the sentencing hearing that defendants who are subject to supervised release conditions are already subject to certain restrictions on their liberties. Those restrictions are attributable to the fact that although the defendant is not in actual custody, he or she is still in legal or "constructive" custody of the court.

*See Collazo-Castro*, 660 F.3d at 522. As the Eleventh Circuit[4] aptly described the distinction between an arrest warrant that issues under reach back jurisdiction and an arrest warrant that issues for an otherwise free individual, "It is not the same because the step from constructive custody to actual custody is shorter than the leap from unsupervised freedom to actual custody." *United States v. Presley*, 487 F.3d 1346, 1349 (11th Cir. 2007); *see United States v. Vargas-Amaya*, 408 F.3d 1227, 1229 (9th Cir. 2005) (Callahan, J., dissenting) ("Congress, consistent with historical practice and the Constitution, treats the retaking of convicted criminals on conditional release differently than unconvicted targets of arrest."). The legal distance between constructive and actual custody is lesser because a defendant who is in constructive custody "is not entitled to 'the full panoply' of due process rights" to which a criminal defendant is entitled during his criminal prosecution. *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 n.5 (1998) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ("[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.")). As this Court stated at the sentencing hearing, the limits on a probationer's or releasee's Fourth Amendment rights, while not completely diminished, are lessened due to the

---

[4] The Eleventh Circuit's opinion in *United States v. Presley*, 487 F.3d 1346 (11th Cir. 2007), comments on this distinction but does not contribute to the Circuit split on this exact issue because the *Presley* decision involved a summons, not an arrest warrant under § 3583(i), which is distinctive in terms of the applicability of the Fourth Amendment's Warrant Clause because "the Constitution . . . does not even mention summonses[.]" 487 F.3d at 1349.

There are also several cases in which courts conclude that "as a person serving a term of supervised release, [the defendant] was 'in custody' within the meaning of § 2255 when he filed his petition in the district court." *United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997); *see Jones v. Cunningham*, 371 U.S. 236, 240–43 (1963) (holding that a paroled prisoner is in custody when conditions of release impose "significant restraints" on liberty); *Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir.1995) (noting that supervised release is part of the sentence and carries liberty restrictions with it); *United States v. Essig*, 10 F.3d 968, 970 n.3 (3d Cir.1993) (ruling that supervised release satisfies the "in custody" requirement of § 2255). Although these cases are within the context of 28 U.S.C. § 2255, their holdings support the Court's conclusion that liberty restrictions on a defendant's freedom via conditions of supervised release place the defendant within legal custody.

individual's status as already being within legal custody of the Court, albeit one step short of physical custody.

Finally, Defendant's proposed expansion of the full array of Fourth Amendment protections to supervised releasees runs counter to this Court's judicial authority and discretion to oversee supervised release procedures. Unlike the credibility of a witness involved in procuring an initial arrest warrant, the credibility of the probation officer is not an issue before the court on a petition for revocation. *See United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998) ("The probation officer serves as an investigative and supervisory arm of the court. . . . ." (internal quotation marks omitted)). One of the roles of the probation officer, as an arm of the court, is to alert the court to evidence of a violation of the conditions of release; the court, not the probation officer, then determines whether probable cause exists to issue a warrant so that the parties may present relevant evidence and arguments at a hearing. By comprising the investigative arm of the court, probation officers are not witnesses subject to credibility determinations. As the dissent in *Vargas-Amaya* stated, "an oath in no way improves the substance of the probation officer's petition for a warrant. Simply put, if the substance of a petition is insufficient to support a finding of probable cause, the petition should be denied." 408 F.3d at 1233. This Court's ability to expediently address concerns about supervised release violations is founded in its authority and discretion over supervised release procedures and its trust in the United States Probation Office, none of which this Court intends to diminish to accomplish a massive paradigm shift not supported by the case law of the Court of Appeals for the Tenth Circuit or of the Supreme Court of the United States.

Therefore, the Court concludes that under the delayed revocation jurisdiction provided in 18 U.S.C. § 3583(i), there is no oath requirement applicable to the underlying petition for an arrest

warrant to issue upon probable cause that a defendant violated the conditions of supervised release. As this was the case for the 2004 revocation of Defendant's supervised release, the court properly exercised reach back jurisdiction under 18 U.S.C. § 3583(i) and Defendant's sentence for violating the conditions of his supervised release out of the Southern District of California is constitutional.

## CONCLUSION

Accordingly, for the reasons set forth in this Memorandum Opinion and Order, the Court **OVERRULED** Defendant's objection to including the 2004 revocation of supervised release in Defendant's Sentencing Guidelines calculations. *See* PSR, ¶ 28; Doc. 22. Therefore, the correctly calculated total adjusted United States Sentencing Guidelines range is 24–30 months based on a total offense level of 15 and criminal history category of III. At the sentencing hearing on May 6, 2019, the Court imposed a within-Guidelines sentence of 24 months' commitment to the custody of the Bureau of Prisons.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE